UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

Brian James Livingston and Joan Elizabeth
Livingtston,

        Debtors.
_____/

Transnation Title Insurance Company, for itself,
and as Subrogee of Janet and Martin Mulloy and
Dean Livingston and Caren Okins,

        Plaintiffs,

vs.

Brian James Livingston and Joan Elizabeth
Livingston,

        Defendants.
_____/

Case No. 05-81276
Chapter 7
Hon. Phillip J. Shefferly

Adv. No. 06-4481

## OPINION GRANTING PLAINTIFF'S MOTION
## FOR SUMMARY JUDGMENT

### I. Introduction

The Debtors in this case sold real property that was subject to a lien without satisfying the mortgage debt from the sale proceeds. Transnation Title Insurance Company brought this adversary proceeding under § 523(a)(2)(A) of the Bankruptcy Code, seeking a determination that a debt owing by the Debtors, Brian James Livingston and Joan Elizabeth Livingston, is non-dischargeable. The issue before the Court is whether a state court judgment rendered in favor of Transnation and against the Debtors collaterally estops the Debtors from re-litigating the elements of § 523(a)(2)(A) in this adversary proceeding. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), over which this Court has jurisdiction under 28 U.S.C. § 1334(a). For the reasons set forth in this opinion, the Court

holds that Transnation is entitled to summary judgment against the Debtors based upon the application of collateral estoppel principles to the judgment rendered by the Wayne County Circuit Court for the State of Michigan.

## II. Facts

The Debtors owned two properties, one located in Northville, Michigan and one located in Dearborn Heights, Michigan. Each of them was encumbered by a first mortgage. On March 2, 1999, the Debtors granted a second mortgage on both properties to Standard Federal Bank to secure a loan in the amount of $166,000. On November 23, 1999, the Debtors sold the Northville property and conveyed title by warranty deed. The first mortgage was paid but the Standard Federal Bank mortgage was not paid. On April 6, 2000, the Debtors sold the Dearborn Heights property and conveyed title by warranty deed. Again, the first mortgage was paid, but the Standard Federal Bank mortgage was not. On January 24, 2001, Standard Federal Bank foreclosed its second mortgage on the two properties. Transnation issued owner's title insurance policies to the purchasers of both of these two properties. Ultimately, Transnation paid the Standard Federal Bank mortgages and became subrogated to the rights of the purchasers with respect to the two properties.

On June 20, 2001, Transnation filed suit in Wayne County Circuit Court against the Debtors. The complaint contained four separate counts: Count I - Breach of Contract; Count II - Innocent Misrepresentation; Count III - Intentional Misrepresentation/Fraud; and Count IV - Unjust Enrichment. The complaint sought a judgment against the Debtors for $168,045.84, plus interest, costs and fees to reimburse Transnation for the amount that it had paid to Standard Federal Bank on account of its second mortgage on the two properties. The Debtors were represented by counsel and filed answers in the state court case. Both of the Debtors were then deposed in the state court case

on October 23, 2001. On May 9, 2002, Transnation filed a motion for summary disposition in the state court case under Mich. Ct. R. 2.116(C)(10), which provides that a motion for summary disposition may be granted where, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." Transnation's motion for summary disposition was based upon all four counts of its complaint. The Debtors opposed the motion. In support of their opposition, the Debtors each filed a detailed affidavit signed by them on June 1, 2002. The Wayne County Circuit Court heard Transnation's motion for summary disposition on June 28, 2002. At the conclusion of the hearing, the court granted the motion. On August 9, 2002, the Wayne County Circuit Court entered a judgment granting the motion. The judgment states only that the Court "granted Summary Disposition on Plaintiff's Complaint in its entirety," and then went on to also provide for the dismissal of the Debtors' counter complaint against Transnation and to set forth the amount of the judgment, plus interest and costs that had accrued. (Pl.'s Mot. for Summ. J., Ex. Q.)

The Debtors timely appealed from the Wayne County Circuit Court judgment. On February 3, 2004, the Michigan Court of Appeals affirmed the Wayne County Circuit Court's judgment in an unpublished opinion. Transnation Title Insurance Co. v. Livingston, No. 243509, 2004 WL 203075 (Mich. Ct. App. Feb. 3, 2004). The opinion began with a discussion of Transnation's fraud claim against the Debtors and held that the Debtors "have not met their burden of demonstrating that a genuine issue of material fact exists regarding fraud." Id. at *1. After discussing the fraud count, the Michigan Court of Appeals then observed that Transnation had also pled a count for innocent misrepresentation and went on to note that claims of fraud and innocent misrepresentation are "alternative theories of liability." Id. at *2. The Michigan Court of Appeals stated that the trial court

-3-

erred in finding in Transnation's favor on both of these counts but concluded that such error was "harmless." Id. Next, the Court of Appeals addressed the breach of contract and unjust enrichment counts in Transnation's complaint and concluded that the trial court also erred in granting Transnation summary disposition on both of these counts as they are "inconsistent claims." Id. at *4. Once again, the Michigan Court of Appeals concluded that this error was harmless much as it had stated in its discussion of the fraud and innocent misrepresentation claims. The Michigan Court of Appeals concluded by affirming the judgment in favor of Transnation and did not provide for any remand to the Wayne County Circuit Court for any further proceedings. The Debtors did not seek leave to appeal to the Michigan Supreme Court.

On October 13, 2005, the Debtors filed a Chapter 7 petition for relief. On March 24, 2006, Transnation filed this adversary proceeding seeking a determination that the debt evidenced by the Wayne County Circuit Court judgment in favor of Transnation and against the Debtors is non-dischargeable under § 523(a)(2)(A). The Debtors filed an answer and affirmative defenses. At the close of discovery, Transnation filed a motion for summary judgment.

Transnation's motion for summary judgment first asserts that all of the elements of § 523(a)(2)(A) are established by the Wayne County Circuit Court judgment and the principles of collateral estoppel preclude the Debtors from re-litigating those elements. Second, if the Court concludes that collateral estoppel does not preclude the Debtors from litigating the elements of § 523(a)(2)(A), Transnation asserts that there is no genuine issue of material fact with respect to any of those elements and, therefore, summary judgment should still be entered by this Court in its favor. In support of its motion, Transnation attached numerous exhibits including the Wayne County Circuit Court judgment and the Michigan Court of Appeals opinion. The Debtors responded to the motion

for summary judgment and in support of their response attached affidavits by each of the Debtors together with a copy of the affidavits filed by each of the Debtors in opposition to the motion for summary disposition in the Wayne County Circuit Court. On March 30, 2007, the Court conducted a hearing on Transnation's motion for summary judgment. Because the final pre-trial conference in this adversary proceeding was scheduled for April 9, 2007 and trial was scheduled for April 18, 2007, the Court informed the parties at the conclusion of the March 30, 2007 hearing that it would take the motion for summary judgment under advisement and notify the parties of its decision by the April 9, 2007 final pre-trial conference date. On April 9, 2007, the Court informed the parties that it had determined to grant summary judgment in favor of Transnation and further advised the parties that it would supplement that decision with a written opinion. This opinion supplements the Court's ruling made on the record in open court on April 9, 2007.

III. Summary Judgment Standard

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056(c). Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A "genuine" issue is present "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Berryman v. Reiger, 150 F.3d 561, 566 (6th Cir. 1998) (quoting Anderson, 447 U.S. at 248).

"The initial burden is on the moving party to demonstrate that an essential element of the non-

moving party's case is lacking." Kalamazoo River Study Group v. Rockwell International Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." Id. (citing Anderson, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. Berryman v. Reiger, 150 F.3d 561, 566 (6th Cir. 1998) (citing Anderson, 447 U.S. at 256).

IV. Discussion

Under § 523(a)(2)(A), a Chapter 7 discharge does not discharge an individual debtor from any debt:

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by –
>     (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

The Sixth Circuit Court of Appeals has articulated the following requirements in order for a creditor to prevail in demonstrating an exception to discharge under § 523(a)(2)(A):

> In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money [, property, services, or credit; (2)] through a material misrepresentation[; (3)] that, at the time, the debtor knew was false or made with gross recklessness as to its truth; [(4)] the debtor intended to deceive the creditor; [(5)] the creditor justifiably relied on the false representation; and [(6)] its reliance was the proximate cause of loss. In order to except a debt from discharge, a creditor must prove each of these elements by a preponderance of the evidence.

Rembert v. AT&T Universal Card Services, Inc. (In re Rembert), 141 F.3d 277, 280-81 (6th Cir. 1998) (citing Longo v. McLaren (In re McLaren), 3 F.3d 958, 961 (6th Cir. 1993); Grogan v. Garner, 498 U.S. 279, 291 (1991); Manufacturer's Hanover Trust v. Ward (In re Ward), 857 F.2d 1082, 1083 (6th Cir. 1988)) (footnote omitted).

Transnation asserts that all of the elements of § 523(a)(2)(A) have already been adjudicated by the Wayne County Circuit Court judgment and that such judgment collaterally estops the Debtors from re-litigating those elements. According to Transnation, there is no need for this Court to look beyond the state court judgment to find that there is a non-dischargeable debt under § 523(a)(2)(A) owing by the Debtors to Transnation.

It is well settled that principles of collateral estoppel do have application in non-dischargeability actions before the Bankruptcy Court. See Bay Area Factors v. Calvert (In re Calvert), 105 F.3d 315, 318-19 (6th Cir. 1997) (citing Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991)). The framework for dealing with collateral estoppel issues in this context was summarized as follows:

> In recent years, the Supreme Court has issued a series of decisions expanding the analysis that the federal courts must use to determine whether to give a state judgment preclusive effect. Rather than relying solely on the judicial doctrine of collateral estoppel, a federal court must first consider whether the Full Faith and Credit Act requires it to accord the state judgment the same preclusive effect that the judgment would receive under state law.
>
> The Full Faith and Credit Act states, in relevant part, that state court "judicial proceedings shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."
>
> The Sixth Circuit has held that the Full Faith and Credit Act applies in dischargeability proceedings. . . . [T]he bankruptcy court must initially determine whether a state court judgment would receive preclusive effect in the state where it was rendered. If so, the bankruptcy court must give the state court judgment preclusive effect unless it determines that an exception to the Full Faith and Credit Act exists.

Cresap v. Waldorf (In re Waldorf), 206 B.R. 858, 862 (Bankr. E.D. Mich. 1997) (quoting 28 U.S.C. § 1738) (citations omitted).

The judgment on which Transnation relies for its assertion that it should be given preclusive

effect was granted by the Wayne County Circuit Court in Michigan. Accordingly, this Court must now look to Michigan law to determine whether the judgment has preclusive effect.

Michigan courts apply collateral estoppel "to avoid re-litigation of claims, and to prevent vexation, confusion, chaos, and the inefficient use of judicial resources." Board of County Road Commissioners v. Schultz, 521 N.W.2d 847, 851 (Mich. Ct. App. 1994) (citations omitted). The Michigan Supreme Court has explained Michigan's rule of collateral estoppel as follows:

> Collateral estoppel precludes re-litigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was (1) actually litigated, and (2) necessarily determined.

People v. Gates, 452 N.W.2d 627, 630 (Mich. 1990) (footnote and citations omitted).

The first element of collateral estoppel is that a different cause of action exists between the same parties. That element is clearly met as this adversary proceeding is a different action than the Wayne County Circuit Court lawsuit and this adversary proceeding is between the identical parties, Transnation and the Debtors.

The second element is that the prior proceeding must have culminated in a valid final judgment. The Wayne County Circuit Court judgment was affirmed by the Michigan Court of Appeals and is a valid final judgment between the parties. That element is met.

The third element is that the issue for which preclusive effect is sought must have been actually litigated between the parties in the prior proceeding. In this case, Transnation asserts that it actually litigated all of the issues in this adversary proceeding with the Debtors in the Wayne County Circuit Court case. It is undisputed that the Debtors participated in the Wayne County Circuit Court litigation by filing an answer to Trannation's complaint, a response to the motion for summary disposition, and affidavits in support of their response. Moreover, the Debtors admit that

they appealed to the Michigan Court of Appeals after the Wayne County Circuit Court rendered its judgment. This case does not present the troublesome questions of whether an issue was actually litigated that occur more frequently where the judgment for which preclusive effect is sought was entered upon default. Clearly, the element of actual litigation is met in this case.

The fourth and final element of collateral estoppel under Michigan law presents the difficult question in this case. The fourth element is that the issue for which preclusive effect is sought must have been "necessarily determined" in the prior proceeding. Under Michigan law, "[a]n issue is necessarily determined only if it is 'essential' to the judgment." People v. Gates, 452 N.W.2d at 631 (citation omitted). "Collateral estoppel applies only where the basis of the prior judgment can be ascertained clearly, definitely and unequivocally." Id. (citations omitted). In this case, the Wayne County Circuit Court granted Transnation's motion for summary disposition "on Plaintiff's Complaint in its entirety." The Michigan Court of Appeals then affirmed this judgment. To determine whether the fourth element of collateral estoppel is present requires this Court to first inquire whether any of the four counts in Transnation's complaint that were adjudicated by the Wayne County Circuit Court require identical elements to an action under § 523(a)(2)(A) and, if so, whether the adjudication of such elements was essential to the Wayne County Circuit Court judgment.

Transnation's complaint in Wayne County Circuit Court alleged four counts. Transnation asserts that the grant of summary disposition on its Count III "Intentional Misrepresentation/Fraud" necessarily encompassed and adjudicated a finding of all of the elements that are required to be shown under § 523(a)(2)(A).

The Sixth Circuit Court of Appeals has described the elements necessary to demonstrate actionable fraud under Michigan law as follows:

> The general rule is that to constitute actionable fraud [under Michigan law] it must

-9-

appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

Disner v. Westinghouse Electric Corp., 726 F.2d 1106, 1111 n.11 (6th Cir. 1984) (citing Hi-Way Motor Co. v. International Harvester Co., 247 N.W.2d 813 (Mich. 1976)) (other citations omitted).

The recitation of elements of actionable fraud in Michigan under Disner is consistent with the recitation of the elements of fraud described by the Michigan Court of Appeals in its opinion affirming the Wayne County Circuit Court judgment in this case:

> A claim of common law fraud is comprised of the following elements: (a) a material representation by the defendant; (b) the representation was false; (c) when the defendant made the representation, he knew it was false or made it recklessly, without knowledge of its truth as a positive assertion; (d) the defendant made the representation with the intention the plaintiff would act on it; (e) the plaintiff acted in reliance on it; and (f) the plaintiff suffered damages.

Transnation Title Insurance Co. v. Livingston, No. 243509, 2004 WL 203075 at *1 (Mich. Ct. App. Feb. 3, 2004) (citing Belle Isle Grill Corp. v. Detroit, 666 N.W.2d 271 (Mich. Ct. App. 2003)).

Bankruptcy courts in Michigan have uniformly concluded that the elements of a fraud claim under Michigan law are virtually identical to the elements necessary to determine non-dischargeability under § 523(a)(2)(A).

> As is shown by comparing the two sets of fraud elements [under § 523(a)(2)(A) and Michigan common law fraud], . . . [t]he elements of a dischargeability case under 11 U.S.C. § 523(a)(2)(A) for false misrepresentation and fraud are virtually identical to the elements that Michigan requires to establish fraudulent misrepresentation. Thus, a state court judgment based upon fraud necessarily encompasses a finding of all the elements of Section 523(a)(2)(A) and is entitled to collateral estoppel effect in a subsequent bankruptcy court action.

Robinson v. Callender (In re Callender), 212 B.R. 276, 281 (Bankr. W.D. Mich. 1997) (internal quotation marks and citation omitted); see also Building Communications, Inc. v. Rahaim (In re

Rahaim), 324 B.R. 29, 36 (Bankr. E.D. Mich. 2005).

The Michigan Court of Appeals clearly, definitely and unequivocally held that Transnation was entitled to summary disposition on its fraud count against the Debtors: "Defendants claim that they presented a genuine material issue of fact regarding their fraud claim. We disagree. . . . Defendants have not met their burden of demonstrating that a genuine issue of material fact exists regarding fraud." Transnation Title Insurance Co. v. Livingston, 2004 WL 203075 at *1.

Debtors assert that even if the elements of common law fraud in Michigan are identical to the elements under § 523(a)(2)(A), and even if the Michigan Court of Appeals affirmed the Wayne County Circuit Court's judgment that all of these elements were present in this case, this Court should not give preclusive effect to this judgment because the determination of this issue by the Wayne County Circuit Court and the affirmance of its judgment by the Michigan Court of Appeals were not necessary or essential to the judgment by the Wayne County Circuit Court. In other words, because the Wayne County Circuit Court "granted Summary Disposition on Plaintiff's Complaint **in its entirety**," (Pl.'s Mot. for Summ. J., Ex. Q (emphasis added)), then the adjudication of the elements of fraud was unnecessary and constituted only an alternate ground for the judgment. In support of this assertion, the Debtors point out that the Michigan Court of Appeals acknowledged that the Wayne County Circuit Court judgment was granted on all four counts in Transnation's complaint in state court even though the fraud count was inconsistent with the innocent misrepresentation count and the breach of contract count was inconsistent with the unjust enrichment count. The Debtors assert then that the Michigan Court of Appeals' opinion and the Wayne County Circuit Court judgment should be read as granting judgment to Transnation on alternative theories of liability. According to the Debtors, if a judgment is based upon multiple theories of liability, any one of which standing independently would be sufficient to support the judgment, then any one theory of liability

is not by definition "necessary" to the judgment and the judgment therefore does not have preclusive effect with respect to any of the alternative theories of liability.

In support of their argument that the fraud adjudication by the Wayne County Circuit Court, even though affirmed by the Michigan Court of Appeals, was not "necessary" or "essential" to the judgment as required by People v. Gates, 452 N.W.2d at 630, the Debtors rely primarily on two authorities. First, the Debtors rely upon Halpern v. Schwartz, 426 F.2d 102 (2nd Cir. 1970). The Halpern court framed the issue in that case as follows:

> This case presents a unique issue in the law of collateral estoppel which has not been analyzed exhaustively by any court. When the prior judgment rested on several (here three) independent, alternative grounds, is that judgment conclusive as to the facts which were necessarily found in order to establish only one separate ground?

Id. at 104-05.

The Halpern court ultimately concluded that on the facts of its case, the prior judgment at issue should not be given preclusive effect. In that case, the judgment contained three separate grounds, only one of which required a finding of intent on the part of the defendant. Id. at 104. The court concluded that in the subsequent action the finding on the issue of intent in the prior action was not binding because the judgment in the prior action was independently supported by two alternative grounds that did not require a finding of intent. Id. at 106. More important than its holding in that case, however, is the explanation of the policies that the Halpern court provided for the general rule that an issue that was not necessary to a prior judgment, but instead was only incidental or collateral to that judgment, should not be given preclusive effect in a later action between the same parties.

> The reason for this rule is twofold. First, the decision on an issue not essential to the prior judgment may not have been afforded the careful deliberation and analysis normally applied to essential issues, since a different disposition of the inessential issue would not affect the judgment. Second, the decision on an inessential issue in the prior judgment was not subject to the important safeguard as to its correctness, to wit: a contested review on appeal. An appeal from the prior judgment by the losing litigant, asserting error in the determination of an issue not central to the judgment,

-12-

probably would be deemed frivolous by the appellate court, which would affirm without considering the merits of the claim of alleged error.

Id. at 105 (citation omitted).

The other authority that the Debtors rely upon is a comment to the Second Restatement of Judgments, which states that, "[i]f a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." Restatement (Second) of Judgments § 27 cmt. i. (1982). This comment is directly contrary to a comment in the First Restatement of Judgments, which stated that, "[w]here the judgment is based upon the matters litigated as alternative grounds, the judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment." Restatement (First) of Judgments § 68 cmt. n. (1942).[1]

The First Restatement of Judgments was in effect at the time of the Halpern decision but the Halpern court did not follow the comment to it. Although Halpern did not follow the comment to the First Restatement, it did acknowledge the existence of prior case law that was consistent with the comment: "Judge Learned Hand used language often cited for the position contrary to the one we now take: 'if a court decides a case on two grounds, each is a good estoppel.'" Halpern v. Schwartz,

---

[1] This difference between the two Restatements appears only in the comments. The substantive portion remains the same. Compare Restatement (First) of Judgments § 68 ("(1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action. on a different cause of action, except as stated in §§ 69, 71 and 72. (2) A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of fact not actually litigated and determined in the first action."), with Restatement (Second) of Judgments § 27 ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").

426 F.2d at 107 (quoting Irvington Nat'l Bank v Law, 10 F.2d 721(2d Cir. 1926)).

Although People v. Gates is cited for the proposition that the fourth element of collateral estoppel is that the issue must have been "essential" or "necessary" to the prior judgment, no cases in Michigan were cited to this Court that address the specific facts that are present in this case, where the judgment in the prior action was based on alternative theories of liability.  However, there are cases on point from other jurisdictions that are instructive to this Court in understanding whether an issue may still be found essential or necessary to a prior judgment under Michigan law even where there are alternative grounds to support such judgment.  See Baumgart v. Alam (In re Alam), 359 B.R. 142, 147 (B.A.P. 6th Cir. 2006) (noting that, when faced with an "undecided question of state law, federal courts . . . 'may rely upon analogous cases and relevant dicta in the decisional law of the State's highest court, opinions of the State's intermediate appellate courts to the extent that they are persuasive indicia of State Supreme Court direction, and persuasive opinions from other jurisdictions'") (quoting Welsh v. United States, 844 F.2d 1239, 1245 (6th Cir. 1988)). The Court finds one opinion from the U.S. Court of Appeals for the Third Circuit particularly persuasive.

In Jean Alexander Cosmetics, Inc.v. L'Oreal USA, Inc., 458 F.3d 244 (3rd Cir. 2006), the court analyzed in detail the various cases that have wrestled with what preclusive effect, if any, to give to a judgment that is based upon multiple and alternative grounds.  In doing so, the court discussed the change in the comments in the two Restatements.  The starting point for the court's discussion is the same as in this case: was the adjudication of an issue "necessary" to the judgment in the prior proceeding?  The Jean Alexander court framed the specific issue before it as follows: "We must determine whether a finding that is an alternate, but independently sufficient, basis for a judgment should be deemed necessary to a decision for purposes of collateral estoppel." Id. at 251.

The Jean Alexander court noted that the comment to the First Restatement of Judgments

extended preclusive effect to the findings supporting each alternative holding in these circumstances. Id. The court then observed that the comment to the Second Restatement adopted the contrary position, relying "heavily on the reasoning of" Halpern. Id. at 251 n.4. After reviewing decisions from various jurisdictions, the Jean Alexander court did not follow Halpern or the comment to the Second Restatement and instead held that the particular issue adjudicated in the first case should have preclusive effect in the second case. Id. at 252-55. In reaching its conclusion, the court provided a thoughtful discussion of the policies behind each of these two competing positions. On the one hand, applying preclusive effect to alternate holdings furthers the basic objective of the collateral estoppel doctrine which is to protect litigants from the burden of re-litigating identical issues with the same parties and thereby promoting judicial economy. Id. at 253. Second, "[c]ourts routinely decide cases on multiple grounds, each of which has been fully litigated and given careful consideration due to their potentially dispositive role in the case." Id. The court pointed out that "under these circumstances, it would be curious to conclude that *none* of these findings were necessary to the judgment for purposes of collateral estoppel." Id.

On the other hand, the court considered the policies behind the comment to the Second Restatement and the Halpern decision. First is the notion that "a determination in the alternative may not have been as carefully or rigorously considered" as if it had been the only grounds to support the result. Id. Second, if one alternative ground would support the judgment, then the losing litigant has little incentive to appeal another ground even if it may happen to be erroneous. Id. at 253-54 (citation omitted). Finally, a losing litigant may feel compelled to file a "'cautionary appeal' to avoid the possible preclusive effects of an alternate holding in future litigation." Id. at 254. Such a result would be contrary to the policy of judicial economy and needless litigation.

Ultimately, the Jean Alexander court was unconvinced by the comment to the Second

-15-

Restatement and Halpern.

> We are not persuaded by the rationale supporting the position of the Second Restatement. As a general matter, we are unconvinced that courts do, or should be assumed to, give less rigorous consideration to the alternative grounds they voice for their decisions. A determination that is independently sufficient to support a court's judgment is not incidental, collateral, or immaterial to that judgment, and it is reasonable to expect that such a finding is the product of careful judicial reasoning.

Id. at 254 (internal quotation marks and citation omitted).

Transnation's motion for summary judgment presents an issue of state law. The parties did not cite nor could this Court find any decision by a Michigan court addressing the precise issue before this Court as to the preclusive effect of a judgment based on multiple grounds, any of which would be independently sufficient to support the judgment. As a federal court faced with resolving an undecided question of state law, this Court "must make the best prediction, even in the absence of direct state precedent, of what the [Michigan] Supreme Court would do if it were confronted with [the] question." Combs v. International Insurance Co., 354 F.3d 568, 577 (6th Cir. 2004) (citing Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938)) (internal quotation marks and other citations omitted).

In City of Detroit v. Qualls, 454 N.W.2d 374 (Mich. 1990), the Michigan Supreme Court articulated its view of the policies behind collateral estoppel. Collateral estoppel "is a flexible judge-made rule generally said to have three purposes: To 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" 454 N.W. 2d at 382 n.30 (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). The Court concludes that these policies would be better advanced through application of the reasoning employed in Jean Alexander and reflected in the comment to the First Restatement of Judgments, and is persuaded that the Michigan Supreme Court would so decide if faced with this

-16-

issue.

The Court finds that, under Michigan law, the findings that support the fraud judgment against the Debtors are necessary to that judgment and would be given preclusive effect by Michigan courts. It is true that the Wayne County Circuit Court judgment, although granting summary disposition on Transnation's complaint "in its entirety," did not contain specific findings. However, it cannot be said either that the adjudication of fraud was somehow incidental to the judgment or that it was not able to be given scrutiny by an appellate court. In this case, the Court has the benefit of the Michigan Court of Appeals opinion that affirmed the Wayne County Circuit Court judgment. One of the specific issues on appeal that was directly addressed by the Michigan Court of Appeals is whether the Debtors had raised a genuine issue of material fact that would prevent judgment against them on the common law fraud count. The Michigan Court of Appeals discussed this issue in detail, going through each and every element of fraud and clearly and unequivocally holding that there was no genuine issue of material fact. If the policy of requiring an issue to have been "necessary" or "essential" to the prior judgment is to ensure that careful consideration of that issue was given by the trial court so that a record could be made available for an appellate court to scrutinize, that policy is not in any way undermined by concluding in this case that the issue of fraud was necessary to the Wayne County Circuit Court judgment for collateral estoppel purposes. None of the dangers that may exist in some cases when preclusive effect is sought to be given to an issue that was unnecessary to a prior judgment are present here. Transnation and the Debtors briefed and argued the summary disposition motion in Wayne County Circuit Court and the Debtors submitted detailed affidavits in support of their position. The Michigan Court of Appeals had the benefit of that record when it rendered its opinion finding that there was no genuine issue of material fact on the fraud count.

Moreover, this is not an instance where the appellate court simply affirmed the judgment

-17-

without explaining the basis for affirmance. Here, the Michigan Court of Appeals expressly stated that it affirmed the judgment because it found no genuine issue of material fact on any element that is necessary for a determination of common law fraud under Michigan law. Even though the Debtors are correct that a judgment could have independently been rendered against them based on a theory under than fraud, we know in this case that the Michigan Court of Appeals has already provided the careful deliberation required to review the record of the lower court to determine whether there are any issues of material fact on any of the elements of the fraud count and it has concluded that there are none. While the findings of the trial court as affirmed by the Michigan Court of Appeals relative to the fraud count may not be necessary to a judgment for breach of contract in favor of Transnation against the Debtors, those findings certainly are necessary in every sense of the word to the judgment rendered by the Wayne County Circuit Court and affirmed by the Michigan Court of Appeals with respect to the count based upon common law fraud under Michigan law. A review of its opinion readily demonstrates that the findings to support the judgment based on fraud were not in any way incidental or irrelevant to the judgment. The Court has no doubt that, if a new state court suit were brought between these parties that sought to determine fraud on the part of the Debtors, a Michigan court would not hesitate to find that this issue was already necessarily determined by the Wayne County Circuit Court. In these circumstances, the Court concludes that the final element for collateral estoppel is present and that the determination of the elements of common law fraud in Michigan was necessary to the judgment granted by the Wayne County Circuit Court on Count III of Transnation's complaint in the state court case against the Debtors.

The Debtors may disagree with the Michigan Court of Appeals' decision to affirm the Wayne County Circuit Court judgment. However, the Full Faith and Credit Act requires this Court to accord it the same preclusive effect that the judgment would receive under Michigan law. The Court

-18-

concludes that all the elements of collateral estoppel under Michigan law are present in this case and that the Wayne County Circuit Court judgment would be given preclusive effect by Michigan courts. Therefore, Transnation is entitled to summary judgment in this adversary proceeding determining that the Wayne County Circuit Court judgment is a non-dischargeable debt under § 523(a)(2)(A). Because the Court has granted summary judgment based on the application of collateral estoppel principles, the Court need not reach the other basis asserted by Transaction in support of its request for summary judgment. The Court will enter a separate order consistent with this opinion.

**For publication**

```
Signed on April 27, 2007
                                           /s/ Phillip J. Shefferly
                                        Phillip J. Shefferly
                                        United States Bankruptcy Judge
```